Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| JOSÉ A. DÍAZ GARCÍA<br><br>Recurrido<br><br>EX PARTE<br><br>**ADMINISTRACIÓN DE SERVICIOS DE SALUD MENTAL Y CONTRA LA ADICCIÓN (ASSMCA)**<br><br>Peticionaria | KLCE202400543 | *Certiorari* procedente el Tribunal de Primera Instancia, Sala de Caguas<br><br>Caso núm.: EECI202400007 (0602)<br><br>Sobre: Código de Salud Mental-Ley 116 Derogada 408 |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Sánchez Ramos, Juez Ponente.

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 24 de mayo de 2024.

En un caso de Ley 408-2000 ("Ley 408"), sobre salud mental, el Tribunal de Primera Instancia ("TPI") le ordenó a la Administración de Servicios de Salud Mental y Contra la Adicción (la "Agencia") pagar el costo de ubicar a una paciente, hospitalizada por varias semanas, pero ya con un alta clínica, en una institución adecuada. Según se expone a continuación, en el ejercicio de nuestra discreción, hemos determinado no intervenir en esta etapa con lo actuado por el TPI.

I.

El 28 de febrero de 2024, el Sr. José A. Díaz García (el "Padre"), por derecho propio, presentó una *Petición de Orden de Tratamiento Compulsorio* (la "Petición"), bajo los Artículos 4.10 y 4.11 de la Ley 408. Expuso que su hija, Sa. Reyna Díaz Rivera (la "Paciente"), tenía un "alto historial de admisiones en facilidades psiquiátricas" y "ha presentado episodios de agresividad". Alegó

que, por tanto, estaba en peligro su seguridad y la de la madre de la Paciente, quien tiene "demencia".

En lo pertinente, en una vista de seguimiento celebrada el 5 de marzo, a la cual compareció una abogada en representación de la Paciente, se informó al TPI que el Hospital Panamericano le estaba brindando tratamiento a la Paciente desde el 23 de febrero.

Surge del récord que, en dicha institución, se diagnosticó a la Paciente con "trastorno esquizoafectivo tipo bipolar y discapacidad intelectual", y se le recetaron varios medicamentos (Zyprexa, para la "psicosis"; Restoril para el insomnio; Klonopin para la ansiedad; Depakote para "estabilización del ánimo" y "control de impulsos"; Haidol Decanoate para "psicosis").

En una vista de seguimiento del **19 de marzo**, se le informó al TPI que la Paciente continuaba hospitalizada. Una representante del Departamento de la Familia ("Familia") indicó que la Paciente necesitaba "estar en un hogar donde le brinden los tratamientos que requiere". Ese día, el TPI ordenó a la Agencia evaluar a la Paciente mientras está hospitalizada.

En la siguiente vista de seguimiento, el 21 de marzo, se indicó que se proyectaba un alta para la Paciente el 25 de marzo. Sin embargo, la abogada de la Paciente informó que esta no tenía "un hogar donde regresar". El representante de Familia le informó al TPI que había identificado el Centro Gaviotas como un hogar viable para la Paciente (el "Hogar").

Una vez más, el TPI le ordenó a la Agencia que evaluara a la Paciente para el 25 de marzo. La Agencia señaló que, como el Hogar no estaba "contratado" por esta, "no se sufragan los gastos de ubicación".

El 25 de marzo, la Agencia informó al TPI que, por la cantidad de trabajo pendiente, no podría realizar la evaluación según ordenado por el TPI.

En una vista de seguimiento del 18 de abril, se le informó al TPI que la Paciente continuaba hospitalizada con "alta clínica". Una representante de la Agencia arguyó que el diagnóstico de discapacidad intelectual de la Paciente le impedía participar del "programa de ASSMCA".

Mediante una Orden de 25 de abril, notificada el 29 de abril (la "Orden"), el TPI le ordenó a la Agencia ubicar "temporeramente" a la Paciente en el Hogar ("o en cualquier otro hogar adecuado a las necesidades de la paciente") y sufragar el costo correspondiente.

El 29 de abril, la Agencia solicitó la reconsideración de la Orden. Planteó que el Hogar no tenía contrato con la Agencia y que "falta determinar la elegibilidad y el nivel de tratamiento" de la Paciente.

Mediante una Orden notificada el 1 de mayo, el TPI denegó la referida moción de reconsideración.

Inconforme, el 20 de mayo, la Agencia presentó el recurso que nos ocupa. Arguyó que el TPI no había dado "la oportunidad a la agencia de hacer un informe adecuado y revisado por el equipo interdisciplinario". Reiteró lo planteado ante el TPI en cuanto a la ausencia de un contrato entre el Hogar y la Agencia. Planteó que al Poder Judicial "no le corresponde decidir cómo la ASSMCA debe administrar sus fondos", y que la Agencia tiene "recursos financieros limitados que deben ser utilizados de manera eficiente". Disponemos.

## II.

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *IG Builders et al. v. BBVAPR,* 185 DPR 307 (2012); *Pueblo v. Díaz de León,* 176 DPR 913, 917 (2009); *García v. Padró,* 165 DPR 324, 334 (2005). Distinto al recurso de apelación, el tribunal revisor tiene la facultad de expedir

el recurso de manera discrecional, por tratarse de ordinario de asuntos interlocutorios. Sin embargo, nuestra discreción debe ejercerse de manera razonable, procurando siempre lograr una solución justiciera. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008); *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001).

La Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 52.1, reglamenta en qué circunstancias este Tribunal podrá expedir un auto de *certiorari*; al respecto, dispone, en lo pertinente (énfasis suplido):

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, **solamente será expedido** por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en **cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia**. ...

La Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII–B, R. 40 ("Regla 40"), establece los criterios a examinar para ejercer nuestra discreción, al disponer lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

### III.

Hemos determinado, en el ejercicio de nuestra discreción, y de conformidad con los criterios establecidos en la Regla 40, *supra*, declinar la invitación de la Agencia a intervenir con la decisión recurrida.

A la luz del récord de este caso, y sus circunstancias particulares, no podemos concluir que el TPI haya cometido algún error de derecho o abusado de su discreción. El planteamiento de la Agencia en cuanto a ausencia de contrato con el Hogar no tiene mérito alguno. En primer lugar, el TPI dejó en libertad a la Agencia de, si así lo estimaba apropiado, ubicar a la Paciente en un hogar distinto al indicado en la Orden, siempre que el mismo fuese "adecuado" de conformidad con las "necesidades" de la Paciente. En segundo lugar, y contrario a lo planteado por la Agencia, la validez de un desembolso expresamente ordenado por el tribunal, de conformidad con la interpretación de dicho foro sobre las obligaciones de la agencia bajo una ley, no está, ni puede estar, sujeto a la existencia de contrato alguno.

Por otra parte, el retraso de la Agencia en preparar una evaluación o informe de la Paciente, o el hecho de que sus recursos sean limitados, no podía ser obstáculo para que el TPI actuara oportunamente en protección de la Paciente. Adviértase que la Agencia fue informada sobre la necesidad de una evaluación desde mediados de marzo, pero la Agencia no completó la evaluación correspondiente sin justificación apropiada. De hecho, durante un tiempo sustancial, la Agencia simplemente adujo que la Paciente no sería elegible para recibir servicios porque su diagnóstico era de

discapacidad intelectual.  Ello a pesar de que del récord surge, de forma patente, que la principal condición de la Paciente es de naturaleza siquiátrica.

En fin, en este caso, no está presente el tipo de circunstancia que requiera o aconseje que intervengamos con la discreción ejercida por el TPI en esta etapa del caso.

IV.

Por los fundamentos antes expuestos, se deniega el auto de *certiorari* solicitado.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones